UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INTEGRATED GLOBAL CONCEPTS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>J2 GLOBAL, INC. and ADVANCED MESSAGING TECHNOLOGIES, INC.,<br><br>Defendants. | CASE NO. 5:12-cv-03434 RMW<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)<br><br>[Re Docket No. 10] |

Plaintiff Integrated Global Concepts, Inc. ("IGC") brings this action against defendants j2 Global, Inc. and Advanced Messaging Technologies, Inc. (collectively "j2") claiming that j2 breached the parties' Agreement of Understanding entered into on June 30, 2000, by filing a patent infringement suit against IGC in the United States District Court for the Central District of California. Comp., Dkt. No. 1 ¶ 53. j2 now moves to dismiss all of IGC's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mot., Dkt. No. 10. On October 26, 2012, the court held a hearing to consider defendants' motion. Having considered the papers submitted by the parties and the arguments of counsel, and for the reasons set forth below, the court finds that the release provision in the Agreement of Understanding may be reasonably susceptible to

different interpretations, and, therefore, the action cannot be resolved on a motion to dismiss. However, the court believes that the issue of whether j2's patent infringement action is barred can be resolved following limited discovery and bifurcation of the contract interpretation issue for early resolution by summary judgment or by trial.

I

IGC, an Illinois corporation, entered the facsimile business in Chicago in 1993 and began offering fax-to-email services in 1997. Dkt. No. 1 ¶¶ 10, 11. In 1999, IGC entered into an exclusive agreement with a company named eFax which called for IGC to operate eFax's fax-to-email service using IGC's "own systems, source code and intellectual property … ." *Id.* ¶¶ 17, 21-24.

In 1997 and 1998, Jack Rieley and Jaye Muller, founders of j2,[1] an IGC competitor, filed patent applications that later became U.S. Patent Nos. 6,208,638 (the "'638 patent"), 6,597,688 (the "'688 patent"); these patents were titled "Method and Apparatus for Transmission and Retrieval of Facsimile and Audio Messages Over a Circuit or Packet-Switched Network" and "Scalable Architecture for Transmission of Messages Over a Network," respectively. *Id.* ¶¶ 12, 13. j2 later filed a continuation application of the '688 patent that eventually became U.S. Patent No. 7,020,132 (the "'132 patent"). *Id.* ¶ 14.

Around September 1998, j2 began negotiating the terms of a merger agreement with eFax, under which eFax would become a wholly owned subsidiary of j2. *Id.* ¶¶ 19, 27. During these negotiations, j2 became aware of eFax's outstanding obligations to IGC which included a dispute over payments for certain IGC services. *Id.* ¶¶ 28-30. To settle the dispute, j2, IGC, and eFax entered into an agreement whereby eFax and j2 acquired from IGC a non-exclusive software license and other services to implement the transfer of the eFax customer base from IGC's systems to j2's. *Id.* ¶ 31. The relevant portions of these agreements were embodied in the Agreement of Understanding ("Understanding"), dated June 30, 2000, among j2, eFax and IGC. *Id.* ¶ 32; Dkt.

---

[1] Some of these prior events actually involved j2's predecessor, JFAX. Because this distinction is not relevant to the present motion, the court will refer to both j2 and its predecessor as "j2."

No. 10 Ex. A at 22. The Understanding provides that it is governed by California law. Dkt. No. 10 Ex. A at 24.

In the Understanding, j2 released IGC from:

> all claims … whether presently known or unknown … arising from or related to any past services, equipment, software or other assets provided by IGC to the Merger Parties [eFax or j2] whether pursuant to the Development Agreement, the Co-Location Agreement or any other agreement or understanding, whether written or oral … .

Dkt. No. 10 Ex. B. § 5(a). The Understanding defined these claims as the "Merger Party Claims." *Id.* j2 also agreed "never to institute or maintain against [IGC] any action or proceeding based … upon the matters with respect to which … the Merger Party Claims apply." *Id.* § 7. The Understanding also expressly waived the parties' rights under California Civil Code section 1542 and described the release of rights as "general and unqualified pursuant to the terms hereof." *See* Dkt. No. 1 ¶¶ 35-36; *see also* Dkt. No. 10 Ex. B. § 6.

In early 2005, j2 acquired control of U.S. Patent Nos. 4,994,926; 5,291,302; 5,459,584; 6,643,034; and 6,785,021 (the "Catch Curve patents"). The Catch Curve patents are all entitled "Facsimile Telecommunications System and Method." Dkt. No. 10 Ex. A at 3. In 1999, another company asserted the patents against j2. j2 acquired the patents after settling that litigation. *Id.* at 4.

On September 15, 2006, the j2 subsidiary Catch Curve filed a patent infringement suit against IGC in the U.S. District Court for the Northern District of Georgia (the "Georgia action"). Dkt. No. 10 Ex. A at 5; *see also Catch Curve, Inc. v. Integrated Global Concepts, Inc.*, No. 1:06-CV-2199-AT, slip op. at 5 (N.D. Ga. Sept. 1, 2011). In that case, Catch Curve asserted the Catch Curve patents, arguing that they covered IGC's fax-to-email technology. Dkt. No. 10 Ex. A at 3. IGC brought a breach of contract counterclaim, among others, alleging breach of the Agreement of Understanding. *Id.* at 5. The Georgia court dismissed IGC's contract counterclaim for failure to state a claim. *Id.* at 22-28.

On April 20, 2012, j2 filed a complaint for patent infringement against IGC in the U.S. District Court for the Central District of California (the "Central District action"), asserting infringement of the '638, '688, and '132 patents. Dkt. No. 1 ¶ 53. After IGC filed its contract claim in this court on July 2, 2012, the Central District court stayed j2's patent case pending resolution of IGC's contract claims here.

II

j2 argues that issue preclusion bars IGC from stating a breach of contract claim because IGC fully litigated the same contract claim in the Georgia action and lost. Dkt. No. 10 at 14. However, that litigation involved the Catch Curve patents which are not at issue here. It is also not clear that the Georgia action constitutes a final judgment on the merits of IGC's breach of contract claim.

III

j2 contends that venue for this action should be transferred to the Central District of California. However, the Central District transferred the case here based upon a forum selection clause. The court finds no reason not to honor the forum selection clause.

IV

IGC and j2 disagree as to the meaning of the language "arising from or related to any past services, equipment, software or other assets provided by IGC to the Merger Parties" contained in the release provision of the Agreement of Understanding. j2 persuasively argues that this language has nothing to do with future patent lawsuits on yet to be issued patents. The language, according to j2, does not cover any claim based on services offered by IGC to anyone other than the Merger Parties and does not cover future conduct.

Under California law, which governs here, any ambiguity in a release should be interpreted so as to favor the party releasing liability. *See Solis v. Kirkwood Resort Co.*, 94 Cal. App. 4th 354, 360 (Cal. Ct. App. 2001). "An ambiguity exists when a party can identify an alternative, semantically reasonable, candidate of meaning of writing." *Id.* "An ambiguity can be patent, arising from the face of the writing, or latent, based on extrinsic evidence." *Id.*; *see Pacific Gas &*

*E. Co. v. G.W. Thomas Drayage etc. Co.*, 69 Cal.2d 33, 39-40 (Cal. 1968). If extrinsic evidence does not eliminate the ambiguity or is disputed, interpretation involves a question of fact. *Id.* at 360-61.

IGC asserts that the language "arising from or related to any past services, equipment, software or other assets provided by IGC to the Merger Parties" refers to claims related to IGC's systems, source code and intellectual property (MaxEmail) which IGC used to operate eFax's fax-to-email service. Therefore, since IGC's system operates today as it did when IGC provided its services to eFax and JFAX, the alleged infringing activities of IGC "relate" to the past services IGC provided to the Merger Parties and, therefore, are covered by the release.

Although the court doubts that the parties intended the release provision of the Agreement of Understanding to be interpreted as IGC now contends,

> [t]he fact that the terms of an instrument appear clear to a judge does not preclude the possibility that the parties chose the language of the instrument to express different terms ... [¶] Accordingly, rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties. [Citations.] Such evidence includes testimony as to the 'circumstances surrounding the making of the agreement ... including the object, nature and subject matter of the writing ... 'so that the court can 'place itself in the same situation in which the parties found themselves at the time of contracting.' [Citations.]

*Burch v. Premier Homes, LLC*, 199 Cal. App. 4th 730, 742 (Cal. Ct. App. 2011).

If, after considering the extrinsic evidence, the court decides that the language is susceptible to only one rational interpretation, it may interpret the language as a matter of law. *See Scheenstra v. California Dairies, Inc.*, 213 Cal. App. 4th 370, 390-91 (Cal Ct. App. 2013). If, on the other hand, the language is fairly susceptible to each party's interpretation, a question of fact exists as to the parties' intentions and the issue must be presented to the fact finder. *Pacific Gas*, 69 Cal.2d at 33, 39–40.

V

At the recent case management conference, the court instructed the parties to submit a joint discovery plan leading up to a hearing on the interpretation of the Understanding. If either party contends that after considering the extrinsic evidence, the language at issue is susceptible to only

one reasonable interpretation, it may then file a motion for summary judgment. Otherwise, the schedule should include a proposed date for a case management conference at which a trial date will be set on the interpretation issue.

Dated: March 29, 2013

Ronald M. Whyte
United States District Judge