UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INTEGRATED GLOBAL CONCEPTS, INC. | Case No. C-12-03434-RMW |
| Plaintiff, | **ORDER DENYING-IN-PART AND GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| j2 GLOBAL, INC. and ADVANCED MESSAGING TECHNOLOGIES, INC. | [Re: Docket No. 47] |
| Defendants. | |

Plaintiff Integrated Global Concepts, Inc. ("IGC") brings this action against defendants j2 Global, Inc. and Advanced Messaging Technologies, Inc. (collectively "j2") claiming that j2 breached the parties' Agreement of Understanding. j2 answered and brought counterclaims to which IGC counterclaimed. j2 now moves to dismiss three of IGC's counterclaims under Rule 12(b)6 of the Federal Rules of Civil Procedure: Declaratory Judgment of Implied License, Declaratory Judgment of Patent Exhaustion, and IGC's request for punitive damages.

## I. BACKGROUND

IGC, an Illinois corporation, entered the facsimile business in Chicago in 1993 and began offering fax-to-email services in 1997. Comp. ¶¶ 10, 11. In 1999, IGC entered into an exclusive

agreement with a company named eFax which called for IGC to operate eFax's fax-to-email service using IGC's "own systems, source code and intellectual property . . . ." *Id.* ¶¶ 17, 21-24.

In 1997 and 1998, Jack Rieley and Jaye Muller, founders of j2, an IGC competitor, filed patent applications that later became U.S. Patent Nos. 6,208,638 ("'638 patent"), 6,597,688 ("'688 patent"); these patents were titled "Method and Apparatus for Transmission and Retrieval of Facsimile and Audio Messages Over a Network," respectively. *Id.* ¶¶ 12, 13. j2 later filed a continuation application of the '688 patent that eventually became U.S. Patent No. 7,020,132 ("'132 patent"). *Id.* ¶ 14.

Around September 1998, j2 began negotiating the terms of a merger agreement with eFax, under which eFax would become a wholly owned subsidiary of j2. *Id.* ¶¶ 19, 27. During these negotiations, j2 became aware of eFax's outstanding obligations to IGC which included a dispute over payments for certain IGC services. *Id.* ¶¶ 28-30. To settle the dispute, j2, IGC, and eFax entered into an agreement whereby eFax and j2 acquired from IGC a non-exclusive software license and other services to implement the transfer of the eFax customer base from IGC's systems to j2's. *Id.* ¶ 31. The relevant portions of these agreements were embodied in the Agreement of Understanding ("Understanding"), dated June 30, 2000, among j2, eFax, and IGC. *Id.* ¶ 32; Dkt. No 10 Ex. A at 22. The Understanding provides that it is governed by California law. Dkt. No. 10 Ex. A at 24.

In the Understanding, j2 released IGC from:

> all claims . . . whether presently known or unknown . . . arising from or related to any past services, equipment, software or other assets provided by IGC to the Merger Parties [eFax or j2] whether pursuant to the Development Agreement, the Co-Location Agreement or any other agreement or understanding, whether written or oral . . . .

Dkt. No. 10 Ex. B § 5(a). The Understanding defined these claims as the "Merger Party Claims." *Id.* j2 also agreed "never to institute or maintain against [IGC] any action or proceeding based . . . upon the matters with respect to which . . . the Merger Party Claims apply." *Id.* § 7. The Understanding also expressly waived the parties' rights under California Civil Code section 1542 and described the release of rights as "general and unqualified pursuant to the terms hereof." *See* Dkt. No. 1 ¶¶ 35-36; *see also* Dkt. No. 10 Ex. B § 6.

1   In early 2005, j2 acquired control of U.S. Patent Nos. 4,994, 926; 5,291,302; 5,459,584;
2   6,643,034; and 6,785,021 (the "Catch Curve patents").  The Catch Curve patents are all entitled
3   "Facsimile Telecommunications System and Method."  Dkt. No. 10 Ex. A at 3.  In 1999, another
4   company asserted the patents against j2.  j2 acquired the patents after settling that litigation.  *Id.* at 4.

5   On September 15, 2006, the j2 subsidiary Catch Curve filed a patent infringement suit
6   against IGC in the United States District Court for the Northern District of Georgia (the "Georgia
7   action").  Dkt. No. 10 Ex. A at 5; *see also Catch Curve, Inc. v. Integrated Global Concepts, Inc.*,
8   No. 1:06-CV-2199-AT, slip. op. at 5 (N.D. Ga. Sept. 1, 2011).  In that case, Catch Curve asserted
9   the Catch Curve patents, arguing that they covered IGC's fax-to-email technology.  Dkt. No. 10 Ex.
10  A at 3.  IGC brought a breach of contract counterclaim, among others, alleging breach of the
11  Agreement of Understanding.  *Id.* at 5.  The Georgia court dismissed IGC's contract counterclaim
12  for failure to state a claim.

13  On April 20, 2012, j2 filed a complaint for patent infringement against IGC in the United
14  States District Court for the Central District of California (the "Central District action"), asserting
15  infringement of the '638, '688, and '132 patents.  Comp. ¶ 53.  After IGC filed its contract claim in
16  this court on July 2, 2012, the Central District court stayed j2's patent case pending resolution of
17  IGC's contract claims here.  In its answer to IGC's complaint, j2 filed counterclaims, asserting
18  infringement of the '638, '688, '066, and '132 patents.  j2 Answer 12-18, Dkt. No. 43.  IGC answered
19  this counterclaims with counterclaims of its own, requesting declaratory judgment of invalidity,
20  unenforceability, noninfringement, implied license, and exhaustion with respect to each of the
21  patents in suit.  IGC Answer to Counterclaim ("IGC Answer"), Dkt. No. 45 at 11-33.  IGC also
22  requests attorney's fees under 35 U.S.C. § 285, and "punitive damages in an amount to be
23  determined at trial," *Id.* ¶ 153, 34 at line 11.

## II. ANALYSIS

25  j2 now moves to dismiss the claims for declaratory judgment of an implied license and
26  exhaustion as well as the request for punitive damages.  In order to survive a motion to dismiss
27  under Federal Rule of Civil Procedure 12(b)(6), IGC's complaint must contain enough facts to state
28  a claim that "is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-557 (2007).  A

1  claim has facial plausibility when a court can draw a reasonable inference supporting the

2  allegations, more than a mere possibility is required. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78

3  (2009). A motion should be granted only if it appears beyond a doubt that the nonmoving party

4  "can prove no set of facts in support of his claim which would entitle him to relief, construing the

5  complaint in the light most favorable to [the nonmoving party]." *Edwards v. Marin Park, Inc.*, 456

6  F.3d 1058 (9th Cir. 2004).

Construing the complaint in the light most favorable to IGC, the court finds that (1) IGC has sufficiently pled facially plausible claims for an implied license, (2) IGC fails to allege a justiciable controversy to support exhaustion, and (3) IGC's request for punitive damages has no basis in law or in fact and must be dismissed.

**A. Declaratory Judgment**

j2 moves to dismiss two of IGC's claims for declaratory judgment. A federal court, upon the filing of an appropriate pleading, "may declare the rights and other legal relations of any interested party seeking such declaration" in a case of actual controversy within the court's jurisdiction. 28 U.S.C. § 2201. A request for declaratory judgment must present a justiciable controversy, not merely a dispute of abstract character. *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 240 (1952). A justiciable controversy is one that is "real and substantial," as well as "definite and concrete, touching the legal relations of parties having adverse legal interests." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

The party requesting declaratory judgment must allege that there is a "substantial controversy[] between the parties" with "sufficient immediacy and reality." *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007). The difference between an abstract question and a justiciable controversy is "one of degree," and the court employs a totality of the circumstances case under the facts alleged to determine if there is a substantial controversy. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008). In a patent case, a court can find a substantial controversy in a number of ways including: the creation of reasonable apprehension of an infringement suit, demands for the right to royalty payments, or attempts to create a barrier to the regulatory approval of a product. *Id.* at 1336-39.

### 1. Declaratory Judgment of an Implied License

IGC's counterclaims allege that Agreement of Understanding gave IGC an implied license to the patents. Because j2 has asserted a claim of infringement against IGC, IGC's claim for declaratory relief of an implied license is an actual, non-abstract controversy, which the court may hear.

An implied license signifies a "patentee's waiver of the statutory right to exclude others from making, using or selling the patented invention." *Wang Labs., Inc. v. Mitsubishi Elec. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997). A license does not need any formal granting to give it effect, "any language used by the owner of the patent . . . from which the other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts" constitutes a license. *De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 241 (1927). Implied licenses can arise in a variety of ways including through acquiescence, conduct, equitable estoppel and legal estoppel. *Wang Labs.*, 103 F.3d at 1580.

In its opposition, IGC argues it has an implied license under the theories of legal estoppel, equitable estoppel, and acquiescence. j2 argues that because IGC's counterclaim only specifically mentions legal estoppel, IGC cannot argue for the others in its briefing. However, a "party does not need to plead specific legal theories . . . as long as the opposing party receives notice as to what is at issue in the lawsuit." *Elec. Const. & Maint. Co., Inc. v. Maeda Pac. Corp.*, 764 F.2d 619, 622 (9th Cir. 1985); *see also Wang Labs,* 103 F.3d 1571, 1580 (Fed. Cir. 1997) (the various legal theories are merely labels, not different kinds of licenses). IGC's counterclaim is for an implied license, and therefore, it is free to argue that it has adequately pled facts that support an implied license under any legal theory.

An implied license by equitable estoppel requires that: "(1) the patentee, through statements or conduct, gave an affirmative grant of consent or permission to make, use, or sell to the alleged infringer; (2) the alleged infringer relied on that statement or conduct; and (3) the alleged infringer would, therefore, be materially prejudiced if the patentee is allowed to proceed with its claim." *Winbond Electronics Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 *opinion corrected*, 275 F.3d

1344 (Fed. Cir. 2001).[1] The first element requires that the alleged infringer has knowledge of the patentee and its patent, and must reasonably infer, based upon some communication, that the patentee acquiesced to the allegedly infringing activity. *Id.* at 1374. IGC sufficiently alleges these elements. IGC alleges that the Agreement of Understanding[2] was an affirmative grant, that it relied on the Understanding in continuing to operate its product, and thus, that it would be prejudiced if j2 proceeded with its claims. IGC Answer ¶¶ 129-136. Therefore, IGC has pled a plausible claim of implied license based on equitable estoppel.

j2 argues that it never acquiesced. It claims that that any delay in filing suit cannot be interpreted as acquiescing because it was waiting on a patent reexamination and then had discretion to decide when to bring suit. j2 further argues that in 2006, one of j2's subsidiaries sued IGC for patent infringement for patents not at issue in this lawsuit and during the litigation, in 2010, IGC stated that it expected j2 would eventually sue based upon the patents at issue here.[3] To the extent it is appropriate for the court to consider these factual arguments on a motion to dismiss, they are unconvincing. IGC has adequately alleged a communication that could form the basis for an implied license and j2's alleged behavior around the time of that communication could be interpreted as acquiescing to the license.

Because an adequate counterclaim under one legal theory is adequate to defeat a motion to dismiss, the court does not need to consider IGC's other theories.

---

[1] As j2 points out, IGC, in its opposition, stated the wrong elements of an implied license by equitable estoppel. IGC applied the elements for normal equitable estoppel, which are different from the elements for an implied license based upon equitable estoppel. *See Winbond Electronics*, 262 F.3d at 1374; *Wang Labs*, 103 F.3d at 1581. Nevertheless, as explained, the IGC's alleged facts sufficiently support the claim.

[2] j2 argues IGC's counterclaim for an implied license based on the Agreement of Understanding is merely a restatement of IGC's breach of contract claim, which the j2 argues is pointlessly redundant and contrary to the agreement. j2, however, does not point to any authority suggesting that a counter-counterclaim cannot overlap with a party's original claim. The court previously instructed j2 to schedule an evidentiary hearing to determine the meaning of the Agreement of Understanding. j2 brought the present motion instead so it cannot complain about the interpretation of the Agreement.

[3] j2 requests judicial notice of this document and an order in the Central District action, both of which the court may properly take judicial notice of. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

### 2. Declaratory Judgment of Patent Exhaustion

j2 also moves to dismiss IGC's counterclaim for declaratory judgment of patent exhaustion. The doctrine of patent exhaustion provides that the authorized sale of "an article that substantially embodies a patent" exhausts the patent holder's rights and prevents them from controlling post sale use of the article through the use of patent law. *Quanta Computer, Inc. v. LG Elec., Inc.*, 553 U.S. 617 (2008); *see also Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1105 (Fed. Cir. 2001) ("When a patented device has been lawfully sold in the United States, subsequent purchasers inherit the same immunity [as the seller possessed] under the doctrine of Patent exhaustion."). IGC has the burden of establishing a justiciable controversy such that jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since. *See Benitec*, 495 F.3d at 1344. The court finds that IGC does not sufficiently plead either an authorized sale or a justiciable controversy.

The basis for IGC's exhaustion claim is unclear. Its counterclaim states that the covenant not to sue in the Agreement of Understanding exhausted j2's patent rights. IGC's Answer ¶ 141. However, there is no allegation of a sale as required for patent exhaustion. In its opposition, IGC claims that it brings its exhaustion claim to protect its customers, but suppliers only have standing to request declaratory judgment on behalf of their customers if "(a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers." *Arris Group, Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011). Furthermore, there must be an actual threat of litigation against the customers. *Id.* Fear of economic injury alone is not sufficient to confer standing for declaratory judgment. *Id*. at 1374-75.

IGC alleges that j2 sent a cease and desist letter to IGC's customer Meixler Technologies in 2009. Even if this letter was enough to create a justiciable controversy, IGC has not sufficiently pled that they were contractually obligated to indemnify Meixler or that IGC has a reasonable apprehension of being sued for induced or contributory infringement based upon Meixler's actions. Therefore, IGC's claim for declaratory relief based on patent exhaustion is dismissed.

**B. Punitive Damages**

j2 moves to dismiss IGC's claim for punitive damages on the ground that tort damages are not authorized by patent law. Patent laws provide specific remedies for deterring unreasonable and egregious conduct in enforcing and infringing patents. *See* 35 U.S.C. §§ 284-85 (providing for enhanced damages up to three times the amount necessary as compensation and attorneys' fees in exceptional cases).

j2 is not requesting the court dismiss IGC's request for § 285 damages, but rather moving to dismiss IGC's additional request for "punitive damages in an amount to be determined at trial" to the extent the request is separate from its § 285 request. IGC Answer 34. Because IGC fails to provide any legal authority to support additional punitive damages the court dismisses the request with prejudice.

### III. ORDER

For the foregoing reasons, the court grants-in-part and denies-in-part j2's motion to dismiss. The court GRANTS j2's motion as to IGC's counterclaim for exhaustion and does so without prejudice. The court DENIES j2's motion as to IGC's counterclaim for an implied license. The court GRANTS j2's motion to dismiss the claim for punitive damages beyond those authorized by § 285. IGC has thirty days in which to amend its counterclaims for declaratory relief based upon exhaustion if it can do so in good faith.

Dated: June 28, 2013

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge